2026 IL App (1st) 241897-U

No. 1-24-1897

August 3, 2026

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 6037 |
| | ) | |
| CHARLES HILL, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm defendant's aggregate 20-year sentence for criminal sexual assault as the trial court did not improperly consider an element inherent in the offense in aggravation at sentencing.

¶ 2    Following a bench trial, defendant Charles Hill was found guilty of two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2022)) and sentenced to two consecutive 10-year prison terms for an aggregate term of 20 years' imprisonment. On appeal, defendant argues that

the trial court improperly considered an element inherent in the offense as an aggravating factor at sentencing. We affirm.

¶ 3    Defendant was charged by indictment with several offenses against his daughter, C.H. The State proceeded on counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2022)) (counts I and II) and attempted aggravated criminal sexual assault (720 ILCS 5/8-4, 11-1.30(a)(2)) (West 2022)) (count XIII).

¶ 4    Counts I and II for aggravated criminal sexual assault each alleged that C.H. was under the age 18 at the time of the offenses and that defendant was her family member. Count I further alleged that defendant knowingly inserted his finger into C.H.'s vagina and caused her bodily harm by beating her with a belt. Count II further alleged that defendant knowingly made contact between his penis and C.H.'s vagina and caused her bodily harm by throwing her against a wall. Count XIII for attempted aggravated criminal sexual assault alleged that defendant "presented" his penis in front of C.H.'s mouth by the use of force or threat of force and caused her bodily harm by throwing her against a wall.

¶ 5    At trial, C.H. testified that on April 16, 2022, she was 16 years old and lived with defendant, her father. At around 2 a.m., C.H. woke to defendant "whipping" her upper and lower body with a belt and accusing her of having sex in the house and "bad rapping" him to her friends. Defendant examined C.H.'s cell phone and read her text messages. Defendant asked C.H. if she liked "touch[ing] herself," showed her pornography of women "fingering themselves," and asked, "is that what [she did]."

¶ 6    Defendant "threatened" to strike C.H. with a belt if she did not "touch herself," so she removed her pants and began "touching herself" as she lay on her bed. Defendant touched the

inside of C.H.'s vagina with his index finger and asked if "she liked it." C.H. said, "no." C.H. then dressed. Defendant took her phone and told her that they would "talk later" the next day.

¶ 7    On April 17, at around 4 a.m., C.H. and defendant were in the kitchen and defendant "fondled" C.H.'s breast and buttocks. Defendant told C.H. to remove her pants, and he inserted his penis into her vagina for "1 to 3 minutes." Defendant then got on top on C.H. and exposed his penis in her face in an attempt to compel her to perform oral sex. C.H. said, "no." Defendant then went to the bathroom, retrieved a cloth, wiped C.H., and left the room.

¶ 8    On April 18, at around 9 a.m., defendant dropped C.H. at his girlfriend, Angela Anderson's, home. C.H. told Anderson that defendant assaulted C.H. and asked to use Anderson's phone to call C.H.'s mother. C.H. told her mother and sister that defendant assaulted her. Her mother picked her up from Anderson's home and took her to the hospital for a rape kit. C.H. sustained bruising from being beaten with the belt and from defendant choking her and slamming her into a wall.

¶ 9    Dr. Monika Pitzele testified that on April 18, 2022, she conducted a sexual assault examination on C.H. C.H. stated that defendant inserted his fingers and penis into her vagina. C.H. also informed Dr. Pitzele that she was beaten with a belt and punched, and that defendant put his hands on her throat. C.H. had abrasions on her face, bruising on her arm and thigh, redness on her labia minora and clitoris, and a small abrasion on her vulva. Dr. Pitzele collected C.H.'s underwear, which she was wearing around the time of the assaults. According to Dr. Pitzele, C.H.'s injuries were consistent with her account of the assaults.

¶ 10    Karen Abbinanti, a forensic scientist at the Illinois State Police Forensic Center, testified that she compared defendant's DNA to male DNA extracted from C.H.'s underwear. The profile from the extracted DNA "included" defendant. On cross-examination, Abbinanti stated that she

could not specify the "source of the DNA" found on the underwear, although the underwear tested positive for semen.

¶ 11    The defense called Anderson, who denied that C.H. told her about the assaults.

¶ 12    Defendant testified that he struck C.H with a belt but denied sexual contact with her or choking her or slamming her into a wall.

¶ 13    The trial court found defendant not guilty of count XIII for attempted aggravated criminal sexual assault. For counts I and II, the trial court found him guilty of the lesser-included offense of criminal sexual assault. Defendant filed a posttrial motion, which was denied.

¶ 14    Defendant refused to participate in the presentence investigation (PSI) report interview.

¶ 15    At sentencing, the State presented in aggravation victim impact statements from C.H. and her three sisters. The statements are included in the record on appeal.

¶ 16    C.H. stated that defendant was absent during her childhood and she never felt his love. It was hard for her to look at defendant as her father after the assaults; he "broke [her] heart" and she thought of harming herself. The "abuse" existed "on constant repeat" in C.H.'s mind. She was "forced to remember the worst parts of it day and night" and "drown in a pool of shame" caused by defendant's actions.

¶ 17    C.H.'s sisters stated that defendant was selfish, neglectful, and manipulative and "forced [C.H.] to endure years of emotional and physical abuse." According to the sisters, defendant was abusive toward women and did nothing but "cause hurt in [their] lives."

¶ 18    The State requested that defendant receive a "significant" prison term due to the "egregious" crime.

¶ 19    In mitigation, defense counsel noted that defendant had not been "locked up" for 27 years. Given defendant's minimal criminal record, which did not include a prior sexual assault, defense counsel requested a sentence "close to the minimum."

¶ 20    In announcing its sentence, the court noted that it considered all factors in aggravation and mitigation. The court mentioned that defendant had a 1996 felony drug conviction, which could be aggravating but occurred a "long time ago." The court found the "most aggravating" factor to be that C.H. was defendant's daughter, telling defendant, "this is a daughter that you *** were supposed to take care of and she was living with you *** but to do something like that to your own daughter, and I believe what she said." Further, the victim impact statements from defendant's daughters highlighted their "hatred" for him due to the "kind of father" he was to them. The court imposed two consecutive 10-year prison terms for an aggregate term of 20 years' imprisonment.

¶ 21    Defendant filed a motion to reconsider his sentence arguing, in relevant part, that the "[c]ourt improperly considered in aggravation matters that are implicit in the offense." The trial court denied the motion.

¶ 22    On appeal, defendant argues that his aggregate 20-year sentence is improper where the trial court considered an element inherent in the offense as an aggravating factor, namely, that defendant was C.H.'s father.

¶ 23    Defendant maintains that he preserved this issue for appellate review but, in the alternative, requests review under the plain error doctrine or as a matter of ineffective assistance for counsel's failure to preserve the issue.

¶ 24    Generally, "both a contemporaneous objection and a written postsentencing motion raising the issue are required" to preserve a sentencing error. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010).

However, unlike other sentencing errors, an objection at sentencing is not required to preserve an allegation that a trial court considered an improper factor at sentencing. See *People v. Martin*, 119 Ill. 2d 453, 460 (1988) (counsel was not required to "interrupt" while the judge was "explaining the sentence being imposed and point out that wrong factors in aggravation were being considered").

¶ 25    Here, defendant filed a motion to reconsider his sentence alleging that the court erroneously considered factors inherent in the offense in aggravation. He argues the same on appeal. As such, the issue is preserved for appellate review.

¶ 26    The Illinois Constitution provides that a trial court shall impose a sentence balancing "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court has broad discretionary powers when imposing a sentence, and this court will not disturb a sentence within the statutory limits absent an abuse of discretion. *People v. Burton*, 2015 IL App (1st) 131600, ¶¶ 35-36. An abuse of discretion occurs when a sentence "varies greatly from the spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 23.

¶ 27    In fashioning a sentence, the trial court must consider "both the seriousness of the offense and the defendant's rehabilitative potential" and carefully consider all factors in aggravation and mitigation. *Id*. ¶ 24; *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. These factors include "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The seriousness of the offense is the most important factor in determining an appropriate sentence.

*People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. The court is not required "to give greater weight to mitigating factors than to the seriousness of the offense," nor does the "presence of mitigating factors either require a minimum sentence or preclude a maximum sentence." *Id.*

¶ 28    In this case, defendant was found guilty of two counts of criminal sexual assault for committing an act of sexual penetration on C.H., who was under the age of 18 at the time, and defendant was C.H.'s family member. 720 ILCS 5/11-1.20(a)(3) (West 2022). As charged, each offense carried a sentencing range of 4 to 15 years in prison. 720 ILCS 5/11-1.20(b)(1) (West 2024) (criminal sexual assault is a Class 1 felony); 730 ILCS 5/5-4.5-30(a) (West 2024) (sentencing range for a Class 1 felony is 4 to 15 years in prison). The trial court sentenced defendant to two consecutive 10-year prison terms. See 730 ILCS 5/5-8-4(d)(2) (West 2024) (mandatory consecutive sentencing for a conviction of criminal sexual assault). As defendant's aggregate 20-year sentence falls within the statutory sentencing range, we must presume it is proper unless defendant affirmatively establishes that the sentence reflected improper considerations. *People v. Cruz*, 2019 IL App (1st) 170886, ¶¶ 51, 54.

¶ 29    Defendant contends the trial court erred in considering in aggravation at sentencing that defendant was C.H.'s father, a familial relationship that was a factor inherent in the offense of criminal sexual assault of a family member. For purposes of criminal sexual assault, a "family member" is defined as a "parent, grandparent, child, aunt, uncle, great-aunt, or great-uncle, whether by whole blood, half-blood, or adoption, and includes a step-grandparent, step-parent, or step-child." 720 ILCS 5/11-0.1 (West 2022). If the victim is a child under the age of 18, it is also defined as "an accused who has resided in the household with the child continuously for at least 6 months." *Id.*

¶ 30    A factor inherent in an offense may not also serve as a factor in aggravation at sentencing. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). The prohibition on the dual use of a single factor, a "double enhancement," is based on the assumption that, "in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *Id*. at 12. Therefore, a single factor cannot be used both as an element of an offense and as a basis for imposing a " 'harsher sentence than might otherwise have been imposed' " had the court not considered the inherent factor. *Id*. (quoting *People v. Gonzales*, 151 Ill. 2d 79, 84 (1992)). Whether a trial court considered an improper aggravating factor should be ascertained from the record as a whole as opposed to focusing on a few words or statements. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47. Whether the trial court considered a factor inherent in the offense as an aggravating factor is reviewed *de novo*. *Phelps*, 211 Ill. 2d at 12. A sentence will not be reversed unless it is "clearly evident" that the sentence was "improperly imposed." *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 31    Considering the record as a whole, we find no error in the court's consideration of the father-daughter relationship between defendant and C.H. in aggravation. A sentencing court may consider in aggravation "the *seriousness, nature*, and *circumstances* of the offense, including the nature and extent of each element of the offense." (Emphases in original.) *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). That is what the court did here when it found in aggravation that defendant committed sexual acts on his "own daughter."

¶ 32    At sentencing, the trial court noted that it considered all aggravating and mitigating factors. Although defendant refused the PSI interview, the trial court was aware of and considered defendant's minimal criminal history in mitigation. It noted that defendant had a 1996 felony drug

conviction, albeit from "a long time ago." In aggravation, the court considered the victim impact statements of C.H. and her sisters, who all informed the court of the harm and pain defendant caused in their lives both before and as a result of the assaults on C.H. The court stated that "most aggravating" was that defendant committed the assaults against his own daughter, who was living with him and who he was "supposed to take care of."

¶ 33   The court may consider in aggravation that "the defendant held a position of trust or supervision *** in relation to a victim under 18 years of age." 730 ILCS 5/5-5-3.2(a)(14) (West 2024). The record reflects that the court properly considered defendant's role as C.H.'s father in that context to highlight defendant's position of trust and supervision over C.H. See *People v. Madura*, 257 Ill. App. 3d 735, 739 (1994) ("It is *** appropriate to consider the nature and degree of a defendant's position of trust or supervision regarding a child/victim, even when the criminal sexual assault charge requires proof of a familial relationship as an element of the crime."); see also *People v. King*, 151 Ill. App. 3d 662, 664 (1987) ("A father, by virtue of his position, owes a special duty of protection to his children" and therefore, "the trial court did not err in considering the defendant's position as an aggravating factor."). Given the nature, circumstances, and seriousness of the offense, the court did not err in considering the specific familial relationship between defendant and C.H. as an aggravating factor at sentencing.

¶ 34   For the foregoing reasons, we affirm defendant's sentence.

¶ 35   Affirmed.